EXHIBIT "F"

Section IX
Use of Force

I. Purpose

It is the purpose of this Policy to establish the guidelines and standards by which Employees of this Office may use lawful force in the line of duty, and under what circumstances, to protect the lives and property of fellow Employees and the Public. All incidents are different and must be evaluated by the circumstances and conditions present at that particular time. All Employees will be familiar with this Policy and how it relates to their duties. This Policy also establishes procedures for regulating and investigating use of force incidents as well as addressing post incident evaluations, assessments and Officer assistance.

II. Scope

This Policy applies to all Sworn Peace Officers, Sworn Reserve Officers and Sworn Jailers.

III. Use of Force

It will be the Policy of this Office that each Employee is trained and instructed in the levels of use of force and the standards and applications that apply to each. In any incident where there is a use of force, it must be justifiable, necessary, reasonable and used only as needed to gain control of an individual or incident. Each incident must be judged and assessed by the circumstances of that particular event. In order to be an effective Employee, Employees must be in control of situations that may present themselves; however, excessive or abusive acts must not be used. The use of physical force may be necessary in certain situations which cannot be otherwise controlled; however, physical force should not be resorted to until all other reasonable alternatives have been exhausted unless it is clear that a certain use of force is justifiable and necessary at that time. Employees are permitted to use whatever use of force is reasonable and necessary to protect themselves or others from bodily injury.

IV. Use of Force Training

All Employees will be instructed in and maintain the requirements of any piece of equipment that they carry for use of force. This includes, but is not limited to, their duty weapon, asp, taser and pepper spray. Employees must maintain State and local policy requirements as it relates to each item and its use. No equipment, other than that which is approved for use by this Office, can be used for use of force. No Employee may carry or use any item that can be used as force without first meeting all State, local and Office Policy.

All Sworn Mandated Peace Officers are required to have firearms training at least once a year and to meet the State and Office requirements for successful qualification on their duty weapon. The Office will supply ammunition for all duty weapons for firearms training and qualification. All firearms training and qualifications will be done by State Certified Training Instructors who are specifically trained in firearms instructions. Employees will also be required to attend any other training required by the State or this Office concerning firearms such a Use of Deadly Force. Employees who carry their own back up or other off duty weapons have the responsibility to be trained and proficient with them and their use.

Employees who are not able to meet the qualification requirements with their duty weapon will be required to attend a make-up training class. Every Employee should be given a reasonable amount of time and attempts to qualify with their duty weapon. The Sheriff will be notified in writing of any Employee who is unable to qualify and will take appropriate action.

Annual firearms training and qualification is a State mandated requirement for all Sworn Peace Officers. Any Employee who is unable to meet the training and qualification requirements as it relates to firearms must not be allowed to perform Peace Officer duties where a firearm is required.

Employees who are excused from firearms training and qualifications due to physical or medical reason must produce a doctor's statement stating the reasons for not participating in the training. To be honored the doctor's statement should note that the training would worsen the Employee's condition. As long as this condition lasts the Employee may not perform Peace Officer duties. If the condition is remedied, the Employee must meet the firearms training and qualifications before assuming Peace Officer duties.

All Employees are encouraged to maintain the firearm proficiency by practicing with their firearms at times other than official scheduled training and to use the Harris County S.O. firing range.

V. Use of Force Reporting and Investigation

It is necessary to report all use of force incidents, from the necessity of drawing a weapon and physical contact to use of deadly force. This is not necessary if the weapon is drawn in instances of clearing homes or as a precautionary measure. Reporting should be verbally to Supervisors and in writing as soon as possible after the incident. Any use of force incident should be noted in the original or supplement report and on a Use of Force Report. Reports should be as detailed as possible, set forth the circumstances of the incident including the type and amount of force used and note any injuries which were caused or received by an Employee. All Employees involved or who may have witnessed the incident, including citizens, should give statements to the facts, circumstances and their involvement. All written statements

and reports should be as specific as possible and completed as quickly as can be reasonably expected.

All info related to the incident to include vehicle In-Car Cameras should be utilized in the evaluation of each use of force incident. All evidence should be processed and protected for later evaluation.

Any injuries suffered by an Employee or the arrestee/suspect/prisoner should be noted with specific facts. Employees injured in the line of duty should immediately notify their Supervisor and complete a Worker's Compensation Form.

All use of force incidents should be reviewed by the Employee's Supervisor as soon as possible and forwarded up the Chain of Command if circumstances warrant. Investigations into the use of force by an Employee should begin immediately by the Employee's first line Supervisor and continue up the chain of command until the issue can be justly evaluated and resolved. The Sheriff may request C.I.D to handle certain cases and outside Agencies may be used at the discretion of the Sheriff.

Use of force incidents should be reviewed in light of Office Polices, their adherence and the adequacy of training when considering the actions that may be taken in a use of force incident.

VI. Definitions

Authorized Weapon: An authorized weapon is any weapon with which a Sheriff's Office Employee has satisfied State and Office Policy in its proper and safe use and any required mandate standards. This includes firearms, tasers, asps and pepper spray. Effective upon the satisfactory completion of the above standards all Officers will carry on duty the Office issued handgun or other weapons, with the Office issued ammunition.

Force: Force is the unwanted touching directed toward another person. This may involve the direct laying on of hands or putting an object into motion that touches an individual. Although all use of force incidents should be evaluated, under certain conditions Sheriff Office Employees have the duty and obligation to use force.

Non-Deadly Force: A quantity of force which is neither likely nor intended to cause great bodily harm.

Deadly Force: That degree of force that is likely to cause death or great bodily harm.

Forcible Felony: Any felony which involves the threat or use of physical force or violence against a person or group of people.

VII. Use of Force Guidelines

The Harris County Sheriff's Office recognizes and respects the value, integrity and life of every person. Employees of this Office have to carefully balance this against the lawful authority to use force and protect the public welfare. When use of force is justified it is necessary to use only that amount of force necessary to overcome the resistance that is being used against the Employee. Employees of this Office are equipped and trained with authorized weapons to achieve control over individuals and incidents involving various situations.

Use of deadly force should only be use when other means of force have been exhausted or deemed impractical (See OCGA 17-4-20(b)-Use of Deadly Force). Control over individuals is achieved through the following: Officer Presence, verbal commands, control and restraint, use of temporary incapacitation or in situations where people are endangered, by the threat or use of deadly force. All actions by Employees of this Office as it relates to use of force are governed by reasonableness and the circumstances of that particular incident or situation. This Office will support any Employee in a use of force incident where the action was lawful, reasonable and within the guidelines of the Policy of this Office. Any violation of Office Policy is intended for internal use only as it relates to administrative or disciplinary action. Any violation of law shall be the basis for other penalties.

The use of non-deadly force may be used by an Employee of this Office in the performance of their duties under the following circumstances or situations.

1. When it is necessary to preserve the peace, prevent the commission of offenses or to prevent suicide or self-inflicting injury;
2. When preventing or interrupting a crime or attempted crime against persons or property;
3. When making lawful arrests and searches, overcoming resistance to arrests or searches, and preventing escapes from custody;
4. When in self-defense, or the defense of another against unlawful violence.

The use of deadly force may be used by an Employee of this Office in the performance of their duties under the following circumstances or situations. OCGA 17-4-20 of the Georgia Code states the following:

Sheriffs and Peace Officers who are appointed or employed in conformity with Chapter 8 of Title 35 may use deadly force to apprehend a suspected felon only when the Officers reasonably believes that the suspect possesses a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; when the Officer reasonably believes that the suspect poses an immediate threat of physical violence to the Officer or others; or when there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm.

The following are given as example of when deadly force may be used.

1. When an Officer reasonably believes it is necessary to defend their life or the life of another, or to prevent grave bodily harm or injury to themselves or another and all available means of defense have failed, be inadequate, impractical or too dangerous under the circumstance.
2. When it is necessary to prevent the commission of forcible felonies.
3. To effect the arrest of an individual or escapee if there is a serious threat of immediate danger to the Officer or third party, such as the use of a firearm or the taking of hostages.
4. When it is necessary to destroy a fatally wounded or sick animal. This should be done only after a reasonable effort has been made to locate the animal's owner. If a firearm is discharged under these circumstances the Officer should attempt to destroy the animal as quickly and humanely as possible with the least amount of attention and take into consideration the presence of any by-standers. The Officer should take special care to ensure that no person is injured or property damaged during the discharge of the weapon. Officers should inform their Supervisors if an injured animal must be destroyed and 911/dispatch should be notified if shots are fired. If an Officer is ask to shoot a wild animal (fox, snake, coyote, ect.) that may be on public or private property, the Officer should contact their Supervisor before shooting the animal, if it is practical.
5. Animals which are mad, vicious, out of control or otherwise a threat to the public may be destroyed if Animal Control cannot respond or handle the situation.

When practical, Officers should identify themselves and give clear and plain commands of their intent to shoot before discharging their weapons. Officers, when given a lawful and reasonable reason to shoot, should shoot to stop the immediate threat and to minimize the danger to innocent bystanders. Under no conditions should a warning shot be fired. Except as noted in the Pursuit Policy, no Officer should fire their weapons from a moving vehicle or at a moving vehicle. Deadly force should not be used towards person who have committed or are committing traffic violations, misdemeanors, non-forcible felonies or forcible felonies not in progress.

Those facts unknown to an Officer cannot be considered in later determining whether the use of lawful force was reasonable or justified. All considerations of reasonableness and justification of use of force must be done based on the facts at the time of the incident. Any use of deadly force should involve not only Office investigations but also the assistance of the Georgia Bureau of Investigation. Any Officer who discharges their firearm in a deadly force incident should be immediately placed on administrative leave until such time a final decision is made on the incident.

VIII. Training and Qualification

Employees of the Sheriff's Office are not allowed to carry any weapon unless they are qualified in its use and proficiency as determined by State Law and Office Policy. Non-deadly weapons authorized by this Office are the Asp, chemicals agents and electrical devises. Other objects or devises are not authorized.

Officers shall carry on-duty only those firearms that are authorized by the Harris County Sheriff's Office. Officers will be qualified and proficient in all firearms that are carried on-duty. This Office will annually schedule regular training and qualification sessions for on-duty firearms. Any Officer who is unable to receive a passing score for firearms qualification will be assigned to non-enforcement duties until this can be resolved. Officers should carry only those weapons which they are currently qualified.

Officers who have suffered an illness or injury that could affect their firearms ability will be required to qualify before returning to enforcement duties.

In any incident in which a firearm was discharged in a use of deadly force the Sheriff and Chief Deputy should be notified immediately. Independent investigations by outside governmental agencies will be respected; however, no Employee will be ordered or requested to confer with other agencies without advice of counsel.

IX. Officer Investigation in Use of Deadly Force Incidents

This policy establishes the duties and responsibilities concerning the investigation into the use of deadly force incidents in which injury occurs, in addition to those listed in Section V of this Policy. These procedures are placed in effect to maintain the integrity of this Office and the confidence of Employees and the Public.

Any Officer involved in a use of deadly force incident where injury has occurred should immediately notify the Harris County 911/Dispatch of the incident and secure the scene. Aid should be rendered to any injured individuals and medical aid requested. The Officer should, if practical, keep the gun or instrument used in the same state that it was when it was used.

Any witnesses to the incident or those having information concerning what happened should be kept at the scene. The Sheriff, Chief Deputy, Chief Investigator and the Officer's Supervisors should be notified and respond. The scene should be kept as secure as possible and turned over to the Chief Investigator upon their arrival. The Georgia Bureau of Investigation should be notified for further assistance with evidence collection and investigatory assistance. The Sheriff or his designee should notify the Harris County Board of Commissioners of the incident as soon as is practical and make arrangements for the release of information to the news media. The Sheriff will be responsible for all press releases.

As with any use of force incident a detailed report of the incident should be completed. Officers involved in the use of deadly force should not discuss the cases

with anyone other than Supervisors, C.I.D., the District Attorney's Office, their Attorney or a Mental Health Professional.

Any Officer involved in the use of deadly force where death or injury has occurred will be immediately relieved of normal duty by the Sheriff. Relief from normal duty is non-disciplinary with no loss of pay or benefits. This allows the Officer the time and ability to address the personal and emotional needs related to the incident and insures that the incident is fully and professionally investigated. The Officer should be readily available for any official interviews or statements and be ready to return to work after the preliminary investigation is completed.

Any in house investigation into a use of deadly force will take Office priority until the facts and evidence have been evaluated and a conclusion can be drawn. The Chief Investigator should present the Sheriff with the findings of the investigation. Based on the investigation, the Sheriff will act on the findings with a recommendation.

Before returning to work all Officers involved in a deadly force incident should speak to a mental health professional and be cleared to return to work by the mental health professional.

X. Batons, Chemical Irritants, Taser and Handcuff Procedures

As has been stated earlier, Officers must be trained and certified in any instrument which they carry for the purpose of use of force. These instruments must also be approved by this Office for use before it can be carried by an Employee. No Employee may carry personal items without the consent of this Office. Sound judgment must be used by Employees in the use of Batons, Chemical Irritants and Tasers as a use of force. The same guidelines apply to all use of force in that it must be reasonable and appropriate to the situation no matter what instrument is used.

The Baton, Taser and Chemical Irritants may be used by an Employee to defend themselves or others from harm, to make an arrest where resistance is encountered and other reasonable means have failed or to subdue persons who have threatened bodily harm to themselves or others, if other means have failed.

The intent of these instruments is to temporarily immobilize an aggressive person in the above situations or to discourage them from an attack on an Employee or others. They are not intended to inflict serious injury or to counter deadly force. These instruments should be used in the manner they were trained to be used and in the appropriate body area.

Handcuffs will be carried by all appropriate Employees for the use of hand restraint. When applied to an individual the cuffs should used in such a manner to insure maximum security and double locked to prevent the cuffs from tightening and causing injury to those in custody. Handcuffs should be used for restraining purposes only.

Handcuffs should be used on all individuals under arrest that will be transported and prisoners in transport. Officers may temporarily handcuff individuals where Officer safety is in question or until a volatile situation can be resolved. Where practical the Officer should advise the individual why they are being temporarily restrained.

All Employees of this Office should read and be aware of the Policy regarding use of force.

5. THE FOLLOWING WILL BE ADDED TO THE "USE OF FORCE" (SECTION V) PORTION OF OUR POLICY MANUAL AND BE EFFECTIVE UPON RECEIPT. PLEASE INSURE THAT ALL OFFICERS READ AND ADHERE TO THIS POLICY.

Use of Force

Section V

Discharge of a Firearm

Any time a firearm is discharged while on-duty, whether intentionally or by accident, the following administrative procedures should be put in place (See Exceptions).

1. The Chain of Command should be notified immediately up to and including the Sheriff. At this time it will be determined whether the incident warrants that C.I.D. respond and initiate an investigation.

2. If it is determined that an investigation should be initiated, C.I.D. will be notified through the on-call Investigator. Upon notification the on-call Investigator will proceed to the incident site and initiate the investigation. Upon the arrival of the Investigator the scene will be turned over to C.I.D. The Sheriff will have the authority to call in outside agencies for investigative purposes based on the situation.

3. The incident scene should be secured and those involved in the incident, witnesses and Officers, available for interviews at the scene or a designated area. The ranking Officer on the scene will be responsible for securing the scene, witnesses and the preservation of evidence until the arrival of the Investigator.

4. C.I.D. will be responsible for evidence collection, interviews and the overall investigation of the incident. The Chief Investigator, with the assistance of the investigating Officer(s) will submit a review of the incident to the Sheriff after the investigation is complete. Any disciplinary action will follow the guidelines set up in our Office Policy.

Any firearm incident that occurs off-duty should be reported immediately through the Chain of Command. If the incident occurs inside Harris County, depending on

the circumstances, the above procedures may be put in place. If the incident occurs outside Harris County that jurisdiction should be notified along with the Officer's Chain of Command. It is incumbent that all Officers handle and secure their firearms in a safe and reasonable so as to prevent the accidental firing of a weapon in their possession or its use by anyone else.
Depending on the circumstances Officers that are involved in incidents of this type may be placed on Administrative Leave by the Sheriff until the investigation is completed and asked to submit to a drug test.

    The above guidelines do not apply to incidents where an Officer must use a firearm to put down an injured animal or an animal that is a threat to the public safety. Incidents such as these should be handled as humanely as possible with consideration to public and property safety. Public exposure to this should be minimized if possible.

# Harris County Sheriff's Office
# Use of Force Continuum

**Level I** – Officer presence and announcement of appropriate authority.

**Level II** – Verbal command and direction by the officer.

**Level III** – Soft/Empty hand control (minimal probability of injury).

**Level IV** – Chemical Agents/Advanced Taser M-26/X-26.

**Level V** – Hard/Empty hand striking techniques.

**Level VI** – Intermediate weapons (Batons)

**Level VII** – Deadly Force. O.C.G.A 16-3-21, lethal force may be used if: "There is sufficient reason to believe that the person against whom the force is used is about to kill or grievously injure the officer or another person, or there is sufficient reason to believe that the force must be used to prevent the commission of a forcible felony."

Subject: Advanced Taser M-26/X-26, Effective May 04, 2004
Section XII, Sub. D
Purpose: To establish guidelines for the safe and effective use of the Advanced Taser M-26/X-26 by members of the Harris County Sheriff's Office.

I. **DEFINITION**

The Taser is a less-lethal conducted energy weapon intended to be used as a defensive or compliance weapon. This weapon should never be used for punishment of any type. It is intended to be used to avert dangerous situations.

II. **POLICY**

A. It is the policy of the Harris County Sheriff's Office to issue, as a defensive of compliance weapon, the Advanced Taser M-26/X-26 to deputies who are certified in its safe and legal use.
B. Only agency issued of approved Tasers will be carried and utilized by members of this agency in the performance of their official duties.
C. Only members of the agency who have passed the Advanced Taser M-26/X-26 certification course will be allowed to deploy one.

III. **COMPLIANCE TECHNIQUES**

The type of technique used must be reasonable in light of the circumstances known to the deputy at the time the technique is used.

IV. **PROCEDURE**

A. Use of force

Deputies of the Harris County Sheriff's Office will use force only when necessary, fully justified, and in compliance with the agency use of force policy. The Advanced Taser M-26/X-26 should be considered a use of force device. It may be used as a less-lethal defensive weapon or as a compliance tool. It is not intended to be used on the passive resister, however when there is reasonable expectation that physical contact will lead to injury to the suspect of the deputy, its use is permitted.

39A

B. Utilization

1. Deputies of the Harris County Sheriff's Office are authorized to utilize the Advanced Taser M-26/X-26 as a defensive weapon when:

   a. A deputy or another person is in jeopardy of sustaining bodily injury.
   b. A subject can not be controlled by a lesser degree of force.
   c. A subject refuses to comply with the lawful commands of a deputy and/or his/her resistance presents a potential physical confrontation that could result in bodily injury to either party.
   d. Aggressive animals.

2. When the Advance Taser M-26/X-26 is used, deputies will follow all procedure as set forth in the certification course.

3. Prior to using the Advanced Taser M-26/X-26, if practical, advise the suspect as well as other deputies present that you are about to use the Taser. When possible the officer should shout "Taser, Taser" prior to deploying the device, so that the pop from the Taser is not mistaken for a gunshot.

4. Use verbal commands and point the laser sight at the subject prior to deploying the Taser, if appropriate.

5. Aim at center of mass. Watch for thick and/or loose clothing, the electrical current can penetrate for a maximum of 2 ¼ inches away from skin.

6. Have a second air cartridge ready to launch in case probes miss the target, there is a malfunction, or an air cartridge did not properly deploy.

B. Aftercare/First Aid/Treatment

1. Only qualified medical personnel should attempt to remove probes imbedded in sensitive tissue areas. I. E. neck, face

39B

and groin. In all other situations it is up to the discretion of the supervisor on duty.

2. Take photographs of any injuries at the incident scene or at the Harris County Jail.

3. Probes that have penetrated the body should be treated as potentially contaminated and gloves should be used when removing them.

4. Probes can be removed by grabbing them firmly while applying pressure to the skin surrounding the probe and pulling out in a quick fashion, follow with alcohol or iodine swipe.

5. Place spent probes tip first into the cartridge side wire pocket container and place in a secure location.

C. Portation/Carry

1. Deputies who are issued the Advanced Taser M-26/X-26 shall carry the weapon on their weak hand side and in a cross draw mode.

## V. REPORTING REQUIREMENTS

Employees of the Harris County Sheriff's Office who utilize the Advanced Taser M-26/X-26 will immediately report the incident to a supervisor and file a "Use of Force" report that includes:

1. A detailed description of the incident.
2. The type and amount of force used.
3. Justification of force used.
4. Injuries sustained as a result of the force used.

## Use of Force Policy Acknowledgement Statement

O.C.G.A. 17-4-20 states that:

(a) An arrest for a crime may be made by a law enforcement officer either under a warrant or without a warrant if the offense is committed in such officer's presence or within such officer's immediate knowledge; if the offender is endeavoring to escape; if the officer has probable cause to believe that an act of family violence, as defined in Code Section 19-13-1, has been committed; if the officer has probable cause to believe that an offense involving physical abuse has been committed against a vulnerable adult, who shall be for the purposes of this subsection a person 18 years old or older who is unable to protect himself or herself from physical or mental abuse because of a physical or mental impairment; or for other cause if there is likely to be failure of justice for want of a judicial officer to issue a warrant.

(b) Sheriffs and peace officers who are appointed or employed in conformity with Chapter 8 of Title 35 may use deadly force to apprehend a suspected felon only when the officer reasonably believes that the suspect possesses a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; when the officer reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others; or when there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm. Nothing in this Code section shall be construed so as to restrict such sheriffs or peace officers from the use of such reasonable nondeadly force as may be necessary to apprehend and arrest a suspected felon or misdemeanant.

(c) Nothing in this Code section shall be construed so as to restrict the use of deadly force by employees of state and county correctional institutions, jails, and other places of lawful confinement or by peace officers of any agency in the State of Georgia when reasonably necessary to prevent escapes or apprehend escapees from such institutions.

(d) No law enforcement agency of this state or of any political subdivision of this state shall adopt or promulgate any rule, regulation, or policy which prohibits a peace officer from using that degree of force to apprehend a suspected felon which is allowed by the statutory and case law of this state.

(e) Each peace officer shall be provided with a copy of this Code section. Training regarding elder abuse, abuse of vulnerable adults, and the requirements of this Code section should be offered as part of at least one in-service training program each year conducted by or on behalf of each law enforcement department and agency in this state.

O.C.G.A. 16-3-21 states that:

(a) A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

(b) A person is not justified in using force under the circumstances specified in subsection (a) of this Code section if he:
(1) Initially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant;
(2) Is attempting to commit, committing, or fleeing after the commission or attempted commission of a felony; or
(3) Was the aggressor or was engaged in a combat by agreement unless he withdraws from the encounter and effectively communicates to such other person his intent to do so and the other, notwithstanding, continues or threatens to continue the use of unlawful force.

(c) Any rule, regulation, or policy of any agency of the state or any ordinance, resolution, rule, regulation, or policy of any county, municipality, or other political subdivision of the state which is in conflict with this Code section shall be null, void, and of no force and effect.

(d) In a prosecution for murder or manslaughter, if a defendant raises as a defense a justification provided by subsection (a) of this Code section, the defendant, in order to establish the defendant's reasonable belief that the use of force or deadly force was immediately necessary, may be permitted to offer:
(1) Relevant evidence that the defendant had been the victim of acts of family violence or child abuse committed by the deceased, as such acts are described in Code Sections 19-13-1 and 19-15-1, respectively; and
(2) Relevant expert testimony regarding the condition of the mind of the defendant at the time of the offense, including those relevant facts and circumstances relating to the family violence or child abuse that are the bases of the expert's opinion.

I acknowledge that I have received a copy of and read O.C.G.A. 17-4-20. I have also read, understood and will comply with the Department of Juvenile Justice Use of Force policy. I understand that I must use the minimum amount of force reasonably believed to be necessary. I also understand that I must report all uses of force using the Special Incident Reporting process described in Department of Juvenile Justice policy.

_____     _____     _____
Investigator *(please print)*         Investigator's Signature              Date