**In the Matter Of:**

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.

---

## DEPOSITION OF

## ROBERT MICHAEL JOLLEY

*September 26, 2017*

---



1201West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999

```
 1            IN THE UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF GEORGIA
 2                    COLUMBUS DIVISION
      _____
 3
      GREG DYKSMA and TAMMY DYKSMA, :
 4    as Parents and Natural        :
      Guardians of Nicholas Dyksma, :
 5    Deceased, and as Personal     :
      Representatives of the ESTATE : CIVIL ACTION FILE
 6    OF NICHOLAS DYKSMA,           : NUMBER:
                                    : 4:17-cv-00041-CDL
 7         Plaintiffs,              :
                                    :
 8    versus                        :
                                    :
 9    DEPUTY TOMMY PIERSON,         :
      SERGEANT JOE HARMON,          :
10    DEPUTY HEATH DAWSON,          :
      DEPUTY WILLIAM STURDEVANT,    :
11    and SHERIFF MIKE JOLLEY,      :
                                    :
12         Defendants.              :
      _____
13
               DEPOSITION OF ROBERT MICHAEL JOLLEY
14

15                      11:03 a.m.
                   September 26, 2017
16
            Harris County Community Center
17                 7509 Highway 116
                   Hamilton, Georgia
18

19

20
            Susan DeCarlo, RPR, CCR No. B-2125
21

22

23

24

25
```



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1   APPEARANCES:

 2   On Behalf of the Plaintiff, GREG DYKSMA and TAMMY
     DYKSMA, as Parents and Natural Guardians of
 3   Nicholas Dyksma, Deceased, and as Personal
     Representatives of the ESTATE OF NICHOLAS DYKSMA:

 4
     THE ORLANDO FIRM, PC
 5   BY:  Craig T. Jones
     Decatur Court, Suite 400
 6   315 W. Ponce de Leon Avenue
     Decatur, GA 30030
 7   404.373.1800
     craig@orlandofirm.com
 8
     On Behalf of the Defendants, DEPUTY TOMMY
 9   PIERSON, SERGEANT JOE HARMON, DEPUTY HEATH
     DAWSON, DEPUTY WILLIAM STURDEVANT, and SHERIFF
10   MIKE JOLLEY:

11   WILLIAMS MORRIS & WAYMIRE
     BY:  Terry E. Williams
12   4330 South Lee Street, NE
     Building 400, Suite A
13   Buford, GA 30518
     678.541.0790
14   terry@wmwlaw.com

15   Also Present:   Sergeant Joe Harmon
                     Deputy Heath Dawson
16                   Deputy William Sturdevant

17

18

19

20

21

22

23

24

25
```



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 3

1                        INDEX OF EXAMINATIONS

2     WITNESS/EXAMINATION                    PAGE
      ROBERT MICHAEL JOLLEY                    4
3     EXAMINATION
            BY MR. JONES                       4
4     DISCLOSURE OF REPORTER                   31
      CERTIFICATE OF REPORTER                  33
5     SIGNATURE OF DEPONENT                    35

6                         INDEX TO EXHIBITS

7     NUMBER          DESCRIPTION            PAGE

8                     (None Tendered.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 4

```
 1   (Tuesday, September 26, 2017          11:03 a.m.)
 2             MR. JONES:  This will be the
 3       deposition of Sheriff Mike Jolley taken by
 4       the Plaintiffs for purposes of discovery,
 5       cross-examination and all other purposes
 6       allowed by law.
 7             The deposition is taken by
 8       agreement of counsel and pursuant to notice.
 9       All objections will be reserved except for
10       those going to the form of the question or
11       the responsiveness of the answer.
12             MR. WILLIAMS:  That is agreeable.
13             ROBERT MICHAEL JOLLEY,
14   called as a witness at the instance of the
15   Plaintiffs, being first duly sworn, was examined
16   and deposed as follows:
17                     EXAMINATION
18   BY MR. JONES:
19       Q.      Okay.  Sheriff Jolley, can you tell
20   us your full name for the record, please?
21       A.      My full name is Robert Michael
22   Jolley, but I go by Mike, M-I-K-E, Jolley.
23       Q.      And we are here about an incident
24   that happened a couple of years ago with Nicolas
25   Dyksma dying at a traffic stop.  Do you recall
```



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 5

1   that incident?

2       A.        Yes, sir, I do.

3       Q.        Okay.  Do you remember giving an

4   interview about the incident on TV afterwards?

5       A.        No, sir.

6       Q.        Okay.  I was going to play a copy

7   of this video and for some reason it does not

8   want to cooperate -- here we go.  I believe this

9   will work.  Let's see -- you know, I might be

10  using the wrong jump drive.  Let me see here -- I

11  am going to see if I can get this to come up.

12  And while I am working on that let me see if I

13  can refresh your memory a little bit.  Do you

14  remember reviewing a video of the incident or

15  more than one video from the patrol cars?

16      A.        Yes, sir, I did review the patrol

17  cameras.

18      Q.        And do you remember a few days

19  after that some young kid or TV station in

20  Columbus coming to your office and interviewing

21  you about it and you said that you reviewed the

22  video and that you determined that everything was

23  according to policy?

24      A.        No, sir, I don't, but I am sure I

25  was interviewed.



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 6

1    Q.       Okay.  Let me see if I can find

2    this thing.  You know, I had this all ready to go

3    last time we did this and then we had to

4    reschedule because somebody got sick and I did

5    not -- I did not test drive it again last night,

6    so I guess that is what you get.

7                 (Off the record discussion.)

8    BY MR. JONES:

9        Q.       Have you reviewed the video of

10   the -- or any video of the incident recently?

11       A.       Yes, sir, I have seen the video

12   recently.

13       Q.       And I guess now that there has been

14   a lawsuit filed over it, you looked at it more

15   closely than you did before?

16       A.       I looked at it pretty close at the

17   time.

18       Q.       At the time?

19       A.       Yes, sir.

20       Q.       If you did make a comment to the

21   news media that you thought that everything on

22   the video had been according to policy, do you --

23   would you still stand by that agreement today?

24       A.       Yes, sir.

25       Q.       Okay.  Do you recall watching the



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

1    video and seeing a Deputy Tom Pierson put his

2    knee on Nicholas Dyksma's neck?  Do you recall

3    seeing that?

4        A.      I am not sure if it was his neck or

5    his shoulder, but it was in that area, yes, sir.

6        Q.      Was there anything improper about

7    that, in your view?

8        A.      No, sir.

9        Q.      And is that something that deputies

10   are trained to do?  I mean, is that a valid

11   technique that they are trained in?

12       A.      I don't think the technique is what

13   you are referring to.  I think that the technique

14   is that they are to put them in some type of

15   submission so that they could gain control of the

16   situation.

17       Q.      Does your policy allow the deputies

18   to use a method of submission -- of force and

19   submission to cause somebody to die?

20               MR. WILLIAMS:  Object to the form.

21   BY MR. JONES:

22       Q.      You can answer the question.

23               And I will come back and elaborate

24   and clarify if you need me to.

25       A.      One of the use-of-force forms is



```
 1   lethal force.
 2        Q.        Right.  And lethal force can be
 3   used to stop a lethal threat, right?
 4        A.        Yes, sir.
 5        Q.        So at the point where Nicolas
 6   Dyksma is removed from the vehicle and he is
 7   placed on the ground and handcuffed and there is
 8   one, two, three, four officers over him, at that
 9   point you would agree he is not a lethal force,
10   right?
11        A.        Absolutely.
12        Q.        He is not a lethal threat at that
13   point, is he?
14        A.        No, sir, he is not.
15        Q.        So if somebody had, say, pulled out
16   a gun and shot him in the head, obviously you
17   would frown on that, wouldn't you, if it happened
18   at that point in time?
19        A.        Yes, sir.
20        Q.        And somebody took out an ASP baton
21   and beat him in the head with it, you would not
22   condone that either, would you?
23        A.        No, sir.
24        Q.        And if somebody took their belt off
25   and wrapped it around his neck and strangled him,
```



1   you would not approve of that, would you?

2        A.        No, sir.

3        Q.        What if somebody did a chokehold on

4   him?  Would that be allowed?

5             MR. WILLIAMS:  Object to the form.

6             THE WITNESS:  No, sir.

7   BY MR. JONES:

8        Q.        And what is your understanding as

9   to what a chokehold is?

10       A.        My understanding of a chokehold

11  would -- someone would put their arm around his

12  neck and cut off oxygen to the -- to him to where

13  he could not breathe, until his oxygen to his

14  brain is cut off.

15       Q.        Okay.  And is that the only -- so

16  with a chokehold do you understand that that is

17  where you basically put a forearm around

18  somebody's neck or some other pressure on it?

19       A.        Or some other form to cut off the

20  oxygen to his brain.

21       Q.        And they could also put a

22  nightstick or something on it and that would be

23  the same thing, wouldn't it?

24       A.        Yes, sir, that would be one form.

25       Q.        Have you every heard of something



```
 1   called compressional asphyxia?
 2        A.        Not in my training, no, sir.
 3        Q.        Not in your training.  Are you
 4   familiar with the concept just from your 30 years
 5   of experience in law enforcement?
 6        A.        I have heard of the concept, yes,
 7   sir.
 8        Q.        And what is your understanding as
 9   to what it is, what it means?
10        A.        The concept would be to cut off
11   oxygen to the body by pressure.
12        Q.        So, like, if you -- let's say if
13   you stood on somebody's neck or chest in such a
14   way as to put pressure on the airway, that could
15   cause them to die from compressional asphyxia,
16   wouldn't it?
17                  MR. WILLIAMS:  Object to the form.
18   BY MR. JONES:
19        Q.        Is that your understanding?
20        A.        It could have a possibility of
21   doing that, yes, sir.
22        Q.        Okay.  Why is it that you believe
23   that it was proper for Nicolas Dyksma to put --
24   I'm sorry, for Deputy Pierson to put pressure on
25   Nicholas Dyksma the way he did in the video?
```



1        A.        I am not sure I understand the

2    question.

3        Q.        Okay.  You saw the video and you

4    saw him put his knee down and you said that it

5    was either his neck or his shoulder, somewhere in

6    the upper torso area, right?

7        A.        Yes, sir.

8        Q.        And don't you believe having viewed

9    the video and knowing how things turned out,

10   don't you believe that that was an improper use

11   of pressure by Deputy Pierson?

12       A.        At that time of the incident, not

13   knowing how the things were going to turn out,

14   placing him in restraints was the primary concern

15   and getting the situation under control and that

16   is what they were doing.

17       Q.        Well, I am asking you specifically

18   about Pierson right now.  Having had time to

19   study the incident more carefully and having

20   learned a little bit more about Deputy Pierson

21   since then, do you have any criticisms now about

22   the way Deputy Pierson handled himself in this

23   situation maybe that you did not have when you

24   viewed it initially?

25       A.        No, sir, because I looked at the



 1   situation as it was at that time, not as it is

 2   now.

 3        Q.        Okay.  Well, do you believe that

 4   Deputy Pierson was unaware that his actions could

 5   be lethal?

 6                  MR. WILLIAMS:  Object to the form.

 7                  THE WITNESS:  I am not sure I

 8        understand your question.  If you can, state

 9        it again.

10   BY MR. JONES:

11        Q.        Do you believe that Deputy Pierson,

12   when he put his knee on Nicholas Dyksma, do you

13   believe that he did so not knowing that that

14   could kill him?

15                  MR. WILLIAMS:  Object to the form.

16                  THE WITNESS:  I believe Deputy

17        Pierson put his knee on him at the time to

18        control him while the handcuffs were being

19        placed on him and that was the sole purpose.

20   BY MR. JONES:

21        Q.        Well, do you have any reason to

22   believe that Deputy Pierson knew that doing so

23   could have fatal consequences?

24        A.        No.  No, sir.

25        Q.        Do you believe that he was trying



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 13

```
1    in good faith to restrain someone and did not

2    realize that it could cause compressional

3    asphyxia?

4                    MR. WILLIAMS:   Object to the form.

5                    THE WITNESS:   I am not sure it did

6        cause it.

7    BY MR. JONES:

8        Q.        Okay.  Well, assuming that it did,

9    assume that the former state medical examiner

10   testified that it did, and assuming that that is

11   one of the factors indicated by the autopsy

12   report, I guess what I am asking is, do you think

13   that Deputy Pierson meant to kill him?

14       A.        I can assure you that that did not

15   happen.

16       Q.        Okay.

17       A.        No deputy of mine would go out to

18   make an arrest with that in their mind, whether

19   it was Pierson or any other deputy.

20       Q.        I understand.

21       A.        Okay.

22       Q.        And if I had asked you a year ago

23   you would say that no deputy would make a traffic

24   stop thinking that he was being able to swap --

25   you know, give somebody a break in exchange for
```



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 14

1  sexual favors too, would you?

2              MR. WILLIAMS:  Object to the form.

3  BY MR. JONES:

4     Q.        You would not have thought Deputy

5  Pierson was capable of anything like that, would

6  you?

7              MR. WILLIAMS:  Object to the form.

8              THE WITNESS:  I don't even -- I

9        don't know what you are wanting me to answer

10       on that.  I mean --

11  BY MR. JONES:

12    Q.        I guess I want you to tell me what

13  you truly feel.  I mean, when you say that no

14  deputy of yours would intentionally kill

15  somebody, would any deputy of yours intentionally

16  rape somebody or sexually assault somebody?

17    A.        No, sir, they would not.

18    Q.        Do you believe that -- so I am

19  going to make it clear here.  As I understand it

20  from your review of the situation you believe

21  that Deputy Pierson was not intentionally using

22  deadly force?

23    A.        Correct.

24    Q.        He was just -- he was intentionally

25  using some level of force that may have



1201West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 15

```
 1   unintentionally caused death --

 2              MR. WILLIAMS:  Object to the form.

 3   BY MR. JONES:

 4      Q.        -- or contributed to death?

 5              MR. WILLIAMS:  Object to the form.

 6              THE WITNESS:  I am not sure if the

 7      force that was used caused the death.  I am

 8      not sure what caused his death.  I am not a

 9      medical examiner.

10   BY MR. JONES:

11      Q.        Okay.  Well, I guess what I am

12   getting at is -- well, let me ask you to describe

13   what you saw Deputy Pierson doing on the video to

14   Nicholas Dyksma.

15      A.        I saw Deputy Pierson assist other

16   deputies extract an individual from a vehicle

17   that was being used.  And during the extraction

18   and being placed in handcuffs, I saw him

19   assisting that.  And then during that extraction

20   and placing him in handcuffs, I saw the

21   individual go into a medical emergency need.

22      Q.        Okay.  And so do you recall that it

23   was after -- after Dyksma was handcuffed was

24   when -- that that is when Deputy Pierson put his

25   knee on him?
```



```
1                    MR. WILLIAMS:  Object to the form.

2                    THE WITNESS:  Say it one more time.

3    BY MR. JONES:

4        Q.        Do you agree that Deputy Pierson

5    did not put his knee on Mr. Dyksma until

6    Mr. Dyksma was on the ground and handcuffed?

7                    MR. WILLIAMS:  Object to the form.

8                    THE WITNESS:  Being placed in

9        handcuffs.

10   BY MR. JONES:

11       Q.        So you believe that it was during

12   the course of the handcuffs?

13       A.        Yes, sir.

14       Q.        And did you notice whether he

15   continued to apply pressure to Nicholas Dyksma's

16   upper torso after the handcuffs were on?

17       A.        It's my recollection of the video

18   that right after the handcuffs were placed on or

19   immediately thereafter, all resistance -- all my

20   deputies ceased that type of action while the --

21   once the handcuffs were placed on.

22       Q.        Well, do you recall that Deputy

23   Pierson at one time removed his knee and then

24   changed position and then put his knee back on

25   again?
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
1          A.        Yes, sir.

2          Q.        And at that time can't you clearly

3    tell that that time the knee is on the neck?

4          A.        The neck area, but I think that it

5    was also on the shoulder area.

6          Q.        Okay.  So the neck and the

7    shoulder?

8          A.        Yes, sir.

9          Q.        As far as the asphyxia -- the

10   compressional asphyxia goes, are you -- have you

11   heard of incidents where people have died from

12   compressional asphyxia because pressure was put

13   on their chest -- chest or back?

14         A.        I have heard some studies show

15   that, but I don't think it has been totally

16   confirmed on the studies that that's a total

17   realization.

18         Q.        Have you heard that just the sheer

19   body weight of multiple people on someone's body

20   could be sufficient to compress their airway so

21   that they could stop breathing?

22         A.        There are some studies that show

23   that and there are some studies that show there

24   is not.

25         Q.        I take it that you -- from your --
```



1201West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
1    from the statement that was on the news that I

2    asked you about and from your testimony today, I

3    take it that none of the officers involved in

4    this incident were disciplined in connection with

5    the incident in any way?

6         A.       That's true.

7         Q.       If it appeared to the other

8    officers, these three gentlemen sitting here, if

9    it appeared to them that Deputy Pierson was doing

10   something that would cause this young man to die

11   or potentially cause him to die, do you think

12   that they would have had a duty to step in and

13   say, okay, that is enough; he is under control

14   now?

15                 MR. WILLIAMS:  Object to the form.

16                 THE WITNESS:  Absolutely.  Yes,

17       sir, absolutely.

18   BY MR. JONES:

19        Q.       I remember back when I was in high

20   school one time and there was a big football

21   player beating up his girlfriend in the parking

22   lot.  And all the other jocks, myself included,

23   just sat around with our thumbs up our butt and

24   did not do anything.  And there has not been a

25   month that has gone by in the last 40 years where
```



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 19

1    I don't think about that where I think I should

2    have stepped in and done something.

3        A.       You should have.

4        Q.       And now I am 40 years older and I

5    guarantee that I would have done something, but

6    you being 40 years older than some of these boys

7    here, do you think that they should have done

8    anything to stop or slow down Pierson in this

9    incident?

10       A.       No, sir, I think that this incident

11   was handled appropriately.

12       Q.       Do you have any opinion as to

13   whether these officers were aware that Deputy

14   Pierson was putting potentially lethal pressure

15   on Nicholas Dyksma's torso?  Whether Pierson was

16   aware of it or not, do you think that they were

17   in a position to see what Pierson was doing to

18   Dyksma?

19       A.       I think that they were in a

20   position to see what was going on around them the

21   best they could.  By the way that the situation

22   was going, it was rapidly going on and it was

23   only a matter of seconds that both incidents took

24   place.  They -- none of my staff have received

25   training on the -- the medical term that you are



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 20

1    talking about --
2         Q.         Right.
3         A.         -- so I am not sure if they even
4    are aware of the phrase you are talking about.
5    And if they are, it's just by something that they
6    may have read on their own.
7         Q.         Do you -- go ahead --
8         A.         Well, I just don't -- I don't think
9    that anything that they would have saw would have
10   given them reason or concern.
11        Q.         Are you familiar with the phrase
12   positional asphyxia?
13        A.         I have heard the phrase, yes, sir.
14        Q.         And have you ever heard of -- you
15   have heard of hog-tying a suspect?
16        A.         Yes, sir.
17        Q.         Have you ever heard that the
18   position that someone is placed in when they are
19   hog-tied, that that can obstruct their breathing
20   and cause them to die from positional asphyxia?
21        A.         I have seen some studies that show
22   that.  But, again, the verdict is still out on
23   whether that is accurate or not.
24        Q.         Well, if there is any question
25   about it, I mean, do you have a policy one way or



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 21

1    the other as to whether you allow suspects to be

2    hog-tied?

3        A.        We don't have a policy, per se, but

4    we don't do it.

5        Q.        And why do you not do it?

6        A.        Just to be on the safe side.

7        Q.        And what do you have -- do you

8    have -- what do you have in the way of a policy

9    or an expectation as far as your officers using

10   choke holds?

11       A.        I would have to look at my policy

12   to make sure, so I -- we don't use choke holds,

13   to my knowledge.

14       Q.        I guess if someone is grabbing an

15   officer's gun or something like that in a

16   situation like that where they potentially are a

17   deadly threat, and the only thing that can be

18   done is to grab the guy by the neck, you know,

19   try to -- try to break his hold or whatever or

20   kill him, if necessary, if he is grabbing a gun,

21   in a situation like that, I guess a chokehold

22   would technically be okay, right?

23       A.        Well, I am not going to go into a

24   situation that I can't be sure what you are

25   talking about, less than deadly force --



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.                                    DEPOSITION OF
ROBERT MICHAEL JOLLEY on 09/26/2017                                                          Page 22

```
1          Q.          Right.

2          A.          -- and then the next would be

3    deadly force.

4          Q.          Yeah.

5          A.          So whether you use a chokehold or

6    whether you use a gun, deadly force is deadly

7    force.

8          Q.          I got you.  And I think that that

9    is getting at what I was trying to get at, which

10   is if -- if you don't have a policy against choke

11   holds, per se, you can -- you can imagine certain

12   situations where a chokehold as a form of lethal

13   force might be appropriate, right?

14         A.          I'm not really sure of your

15   question.  If you are saying could a chokehold be

16   used as a deadly force, the answer is yes.

17         Q.          Yes.  And as long as it's

18   justified --

19         A.          (Witness moves head up and down.)

20         Q.          -- right?

21         A.          If you are saying -- yes, deadly

22   force is deadly force.

23         Q.          And I understand -- right, so you

24   would consider a chokehold deadly force, right?

25                     MR. WILLIAMS:  Object to the form.
```



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1                    THE WITNESS:  If it kills you, yes,
 2          it would be deadly force.
 3   BY MR. JONES:
 4        Q.        Right.  And I guess if it has the
 5   potential to kill you or is likely to kill you,
 6   it would also be considered deadly force, right?
 7                    MR. WILLIAMS:  Object to the form.
 8                    THE WITNESS:  No, sir, I would not
 9          agree with that.
10   BY MR. JONES:
11        Q.        I mean if you shoot somebody in the
12   leg or shoot them in the arm, is that deadly
13   force?
14        A.        A weapon is considered deadly
15   force, yes.
16        Q.        Are you aware that some departments
17   have policies where they don't allow choke holds
18   at all?
19        A.        I would assume if you say so.  I
20   don't get into other policies or other
21   departments.
22        Q.        Do you know the policy of your
23   department as far as lethal force goes?
24        A.        I would like to say that I could
25   quote it right now, but I would be not truthful
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1   if I said that.
 2       Q.          Okay.  I read in the paper, I guess
 3   about a year ago, you were in a situation where
 4   you hit a suspect that was running away from
 5   officers.  You hit them in your car.
 6                   MR. WILLIAMS:  Object to the form.
 7                   THE WITNESS:  I was on my way back
 8       from the beach and someone run out in front
 9       of me and I hit them.  I did not hit the
10       suspect.  The State Patrol was chasing
11       somebody.
12   BY MR. JONES:
13       Q.          And that is what I am trying to get
14   at because the newspaper article was not really
15   clear.
16       A.          I was a victim.
17       Q.          And so what I wanted to ask you,
18   was that an accident or was that a use of force
19   where you were trying --
20       A.          That was an accident.
21       Q.          So you were not trying to help the
22   State Patrol stop the guy or anything?
23       A.          I was a victim.
24       Q.          And the guy that ran out in front
25   of you, I guess, ended up being a victim of his
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
1   own negligence?

2       A.        If I could have found you as a

3   lawyer I might have used you to sue the family.

4       Q.        What did he do to your car?

5       A.        $20,000 worth of damage, and my

6   wife is still having trouble.

7       Q.        Who is your lawyer?

8       A.        Well, I did not sue.  I do not

9   believe in it.

10              MR. JONES:  Give me just a minute

11      to look over my notes here.

12              (Recess.)

13  BY MR. JONES:

14      Q.        Is it your opinion that Deputy

15  Pierson did not know that what he was doing was

16  dangerous, or is it your opinion that you don't

17  know one way or the other whether he knew?

18      A.        I can't tell you what Deputy

19  Pierson was thinking at the time.  He knew that

20  he was in a dangerous situation.

21      Q.        You don't question that he was

22  putting his knee on Dyksma on purpose, do you?

23  He was doing it on purpose.  You just don't think

24  that he appreciated any significant danger from

25  that.  Is that a fair statement?
```



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1        A.        I think that he was just assisting
 2  in making the arrest in the most quickest and
 3  most efficient way possible.
 4        Q.        Did you ever talk to him personally
 5  about it?
 6        A.        No, sir.
 7        Q.        Do you know anybody that did talk
 8  to him personally about it?
 9        A.        I think the GBI interviewed them
10  all.
11             MR. JONES:  Yeah.  I have not seen
12        that investigation.  I don't know if you
13        have.
14             Has it been released yet?
15             MR. WILLIAMS:  Yes.
16             MR. JONES:  Have you produced it to
17        me?
18             MR. WILLIAMS:  I don't know if we
19        got it after your discovery or not.
20             MR. JONES:  Yeah, I don't think
21        that I have seen it yet.
22             MR. WILLIAMS:  It's obtainable from
23        the GBI.
24             MR. JONES:  Okay.  I will just have
25        to follow up and get it.
```



```
 1                   MR. WILLIAMS:  I did not have it --
 2       we just got it fairly recently.
 3                   MR. JONES:  Right.
 4   BY MR. JONES:
 5       Q.        Other than just reading statements
 6   and reading reports, has anybody ever -- anybody
 7   ever told you that they talked to Pierson and
 8   specifically talked to him about this incident?
 9       A.        No, sir, I was told that all the
10   people involved were interviewed and I saw the
11   tapes.
12       Q.        And I need to take his deposition
13   at some point about this case.  Is he still in
14   your facility?
15       A.        He has been in Coweta
16   County.
17       Q.        They are keeping him over there?
18       A.        Yes, sir.
19       Q.        Do you have any idea how long he
20   would be there before he would be shipped out?
21       A.        I think sentencing is October 19th.
22       Q.        October 19th?
23       A.        Yeah.  And then after that --
24       Q.        And then they usually don't pick
25   them up right away, do they?
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 28

```
 1        A.        Whenever the state calls for them
 2   if he gets sentenced to time obviously?
 3        Q.        Right, I understand that.
 4                  MR. JONES:  So we ought to try to
 5        do it before October 19th if we can.
 6                  MR. WILLIAMS:  Probably because
 7        they sometimes get them within days or
 8        sometimes within weeks.
 9   BY MR. JONES:
10        Q.        And then if he does go in and go
11   down to Jackson for six weeks or so then he might
12   end up down in south Georgia someplace.
13                  MR. WILLIAMS:  We would not want
14        him in south Georgia.
15                  MR. JONES:  I hope not.
16                  THE WITNESS:  Probably coastal, if
17        I had to guess.
18   BY MR. JONES:
19        Q.        Savannah?  Well, that ain't a bad
20   trip.  Maybe we ought to just wait.
21                  They got a transitional center
22   there too?
23        A.        Yeah.  He will be in Jackson
24   probably about nine weeks.
25        Q.        They got a backlog?
```



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 29

```
 1        A.        Well, they just normally take that

 2   long.

 3        Q.        It takes nine weeks to figure out

 4   what level of a threat somebody is?

 5        A.        Well, they do health screenings and

 6   everything.

 7        Q.        Yeah.  I am sure he will be

 8   minimal.

 9        A.        But they will put him in a safety.

10        Q.        Yeah.  Put him somewhere where

11   nobody that he arrested --

12        A.        If he gets time.  He may not get

13   time.

14        Q.        Right, he may get probation --

15        A.        He may get probation.

16        Q.        -- or a lot of community service?

17        A.        I doubt if he gets community

18   service.

19        Q.        Going out and giving talks to

20   school kids?

21        A.        I doubt that.  It ain't nothing to

22   do with school kids.

23        Q.        Are you going to testify at his

24   sentencing?

25        A.        Probably not.
```



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 30

1      Q.        Nobody has asked you to?

2      A.        Nobody has asked me to.

3      Q.        You don't have any opinion as far

4   as what you think would be appropriate?

5      A.        (Witness moved head from side to

6   side.)

7      Q.        I am not asking you if you agree

8   with the verdict.  I am just asking you based on

9   the verdict what do you think would be

10  appropriate?

11     A.        No, sir.

12               MR. JONES:  Let me go ahead and let

13        some of these other guys talk.  I appreciate

14        your time.

15               THE WITNESS:  Yes, sir.

16               MR. JONES:  Thank you.

17           (Deposition adjourned at 11:34 a.m.)

18

19

20

21

22

23

24

25



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1                        DISCLOSURE

 2

 3   Pursuant to Article 10.B of the Rules and

 4   Regulations of the Board of Court Reporting of

 5   the Judicial Council of Georgia which states:

 6   Each court reporter shall tender a disclosure

 7   form at the time of the taking of the deposition

 8   stating the arrangements made for the reporting

 9   services of the certified court reporter, by the

10   certified court reporter, the court reporter's

11   employer or the referral source for the

12   deposition, with any party to the litigation,

13   counsel to the parties, or other entity.  Such

14   form shall be attached to the deposition

15   transcript, I make the following disclosure:  I

16   am a Georgia Certified Court Reporter.  I am here

17   as a representative of Discovery Litigation

18   Services, LLC.

19

20        Discovery Litigation Services, LLC, was

21   contacted to provide court reporting services for

22   the deposition.  Discovery Litigation Services,

23   LLC, will not be taking this deposition under any

24   contract that is prohibited by O.C.G.A.

25   9-11-28(c).  Discovery Litigation Services, LLC,
```



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 32

1   has no contract/agreement to provide reporting

2   services with any party to the case, any counsel

3   in the case, or any reporter or reporting agency

4   from whom a referral might have been made to

5   cover this deposition.  Discovery Litigation

6   Services, LLC, will charge its usual and

7   customary rates to all parties in the case, and a

8   financial discount will not be given to any party

9   to this litigation.

10

11       *Susan DeCarlo*

12

13       M. Susan DeCarlo, Notary Public

14       and Registered Professional Reporter

15       Commission Expires 10-22-2020

16       Georgia Certificate Number 2125

17

18

19

20

21

22

23

24

25



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 33

1    STATE OF GEORGIA:

2    COUNTY OF FULTON:

3

4       I hereby certify that the foregoing

5    transcript was reported, as stated in the

6    caption, and the questions and answers thereto

7    were reduced to typewriting under my direction;

8    that the foregoing pages represent a true,

9    complete, and correct transcript of the evidence

10    given upon said hearing, and I further certify

11    that I am not of kin or counsel to the parties in

12    the case; am not in the employ of counsel for any

13    of said parties; nor am I in any way interested

14    in the result of said case.

15

16

17    *Susan DeCarlo*

18    M. Susan DeCarlo, Notary Public

19    and Registered Professional Reporter

20    Commission Expires 10-22-2020

21    Georgia Certificate Number 2125

22

23

24

25



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 34

1                       CAPTION

2

3       The Deposition of ROBERT MICHAEL JOLLEY,

4    taken in the matter, on the date, and at the time

5    and place set out on the title page hereof.

6

7       It was requested that the deposition be

8    taken by the reporter and that same be reduced to

9    typewritten form.

10

11      It was agreed by and between counsel and the

12   parties that the Deponent will read and sign the

13   transcript of said deposition.

14

15

16

17

18

19

20

21

22

23

24

25



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 35

1    DEPOSITION ERRATA SHEET

2    Assignment No.  36959

3    Case Caption:  GREG DYKSMA, et al.

4    vs.  DEPUTY TOMMY PIERSON, et al.

5    Witness: ROBERT MICHAEL JOLLEY  - 09/26/2017

6    DECLARATION UNDER PENALTY OF PERJURY

7         I declare under penalty of perjury

8    that I have read the entire transcript of

9    my Deposition taken in the captioned matter

10   or the same has been read to me, and

11   the same is true and accurate, save and

12   except for changes and/or corrections, if

13   any, as indicated by me on the DEPOSITION

14   ERRATA SHEET hereof, with the understanding

15   that I offer these changes as if still under

16   oath.

17        Signed on the _____ day of

18   _____, 20___.

19   _____

20         ROBERT MICHAEL JOLLEY

21   Sworn to and subscribed before me this _____ day

22   of _____, 20__.

23   _____

24   Notary Public

25   My commission expires_____



1201West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.                    DEPOSITION OF
ROBERT MICHAEL JOLLEY on 09/26/2017                                    Page 36

```
 1              DEPOSITION ERRATA SHEET
 2     Page No._____Line No._____Change to:_____
 3     _____
 4     Reason for change:_____
 5     Page No._____Line No._____Change to:_____
 6     _____
 7     Reason for change:_____
 8     Page No._____Line No._____Change to:_____
 9     _____
10     Reason for change:_____
11     Page No._____Line No._____Change to:_____
12     _____
13     Reason for change:_____
14     Page No._____Line No._____Change to:_____
15     _____
16     Reason for change:_____
17     Page No._____Line No._____Change to:_____
18     _____
19     Reason for change:_____
20     Page No._____Line No._____Change to:_____
21     _____
22     Reason for change:_____
23
24     SIGNATURE:_____DATE:_____
25            ROBERT MICHAEL JOLLEY
```



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Page 37

```
 1              DEPOSITION ERRATA SHEET

 2     Page No._____Line No._____Change to:_____

 3     _____

 4     Reason for change:_____

 5     Page No._____Line No._____Change to:_____

 6     _____

 7     Reason for change:_____

 8     Page No._____Line No._____Change to:_____

 9     _____

10     Reason for change:_____

11     Page No._____Line No._____Change to:_____

12     _____

13     Reason for change:_____

14     Page No._____Line No._____Change to:_____

15     _____

16     Reason for change:_____

17     Page No._____Line No._____Change to:_____

18     _____

19     Reason for change:_____

20     Page No._____Line No._____Change to:_____

21     _____

22     Reason for change:_____

23

24     SIGNATURE:_____DATE:_____

25              ROBERT MICHAEL JOLLEY
```



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 4:17-cv-00041-CDL   Document 37   Filed 05/15/18   Page 39 of 46

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.          DEPOSITION OF
ROBERT MICHAEL JOLLEY on 09/26/2017          Index: $20,000..called

**$**

**$20,000** 25:5

**1**

**11:03** 4:1

**11:34** 30:17

**19th** 27:21,22
28:5

**2**

**2017** 4:1

**26** 4:1

**3**

**30** 10:4

**4**

**40** 18:25 19:4,6

**A**

**a.m.** 4:1 30:17

**able** 13:24

**about** 4:23 5:4,
21 7:6 11:18,
20,21 18:2
19:1 20:1,4,25
21:25 24:3
26:5,8 27:8,13
28:24

**absolutely** 8:11
18:16,17

**accident** 24:18,
20

**according** 5:23

6:22

**accurate** 20:23

**action** 16:20

**actions** 12:4

**adjourned**
30:17

**after** 5:19
15:23 16:16,18
26:19 27:23

**afterwards** 5:4

**again** 6:5 12:9
16:25 20:22

**against** 22:10

**ago** 4:24 13:22
24:3

**agree** 8:9 16:4
23:9 30:7

**agreeable** 4:12

**agreement** 4:8
6:23

**ahead** 20:7
30:12

**ain't** 28:19
29:21

**airway** 10:14
17:20

**all** 4:5,9 6:2
16:19 18:22
23:18 26:10
27:9

**allow** 7:17 21:1
23:17

**allowed** 4:6 9:4

**also** 9:21 17:5
23:6

**am** 5:11,12,24
7:4 11:1,17
12:7 13:5,12
14:18 15:6,7,8,
11 19:4 20:3
21:23 24:13
29:7 30:7,8

**answer** 4:11
7:22 14:9
22:16

**anybody** 26:7
27:6

**anything** 7:6
14:5 18:24
19:8 20:9
24:22

**appeared** 18:7,
9

**apply** 16:15

**appreciate**
30:13

**appreciated**
25:24

**appropriate**
22:13 30:4,10

**appropriately**
19:11

**approve** 9:1

**area** 7:5 11:6
17:4,5

**arm** 9:11 23:12

**around** 8:25
9:11,17 18:23
19:20

**arrest** 13:18
26:2

**arrested** 29:11

**article** 24:14

**ask** 15:12
24:17

**asked** 13:22
18:2 30:1,2

**asking** 11:17
13:12 30:7,8

**ASP** 8:20

**asphyxia** 10:1,
15 13:3 17:9,
10,12 20:12,20

**assault** 14:16

**assist** 15:15

**assisting** 15:19
26:1

**assume** 13:9
23:19

**assuming** 13:8,
10

**assure** 13:14

**autopsy** 13:11

**aware** 19:13,16
20:4 23:16

**away** 24:4
27:25

**B**

**back** 7:23
16:24 17:13
18:19 24:7

**backlog** 28:25

**bad** 28:19

**based** 30:8

**basically** 9:17

**baton** 8:20

**beach** 24:8

**beat** 8:21

**beating** 18:21

**because** 6:4
11:25 17:12
24:14 28:6

**before** 6:15
27:20 28:5

**being** 4:15
12:18 13:24
15:17,18 16:8
19:6 24:25

**believe** 5:8
10:22 11:8,10
12:3,11,13,16,
22,25 14:18,20
16:11 25:9

**belt** 8:24

**best** 19:21

**big** 18:20

**bit** 5:13 11:20

**body** 10:11
17:19

**both** 19:23

**boys** 19:6

**brain** 9:14,20

**break** 13:25
21:19

**breathe** 9:13

**breathing** 17:21
20:19

**butt** 18:23

**C**

**called** 4:14
10:1



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 4:17-cv-00041-CDL   Document 37   Filed 05/15/18   Page 40 of 46

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.          DEPOSITION OF
ROBERT MICHAEL JOLLEY on 09/26/2017                        Index: calls..exchange

calls 28:1

cameras 5:17

can't 17:2
21:24 25:18

capable 14:5

car 24:5 25:4

carefully 11:19

cars 5:15

case 27:13

cause 7:19
10:15 13:2,6
18:10,11 20:20

caused 15:1,7,
8

ceased 16:20

center 28:21

certain 22:11

changed 16:24

chasing 24:10

chest 10:13
17:13

choke 21:10,12
22:10 23:17

chokehold 9:3,
9,10,16 21:21
22:5,12,15,24

clarify 7:24

clear 14:19
24:15

clearly 17:2

close 6:16

closely 6:15

coastal 28:16

Columbus 5:20

come 5:11 7:23

coming 5:20

comment 6:20

community
29:16,17

compress
17:20

compressional
10:1,15 13:2
17:10,12

concept 10:4,6,
10

concern 11:14
20:10

condone 8:22

confirmed
17:16

connection
18:4

consequences
12:23

consider 22:24

considered
23:6,14

continued
16:15

contributed
15:4

control 7:15
11:15 12:18
18:13

cooperate 5:8

copy 5:6

Correct 14:23

could 7:15
9:13,21 10:14,

20 12:4,14,23
13:2 17:20,21
19:21 22:15
23:24 25:2

counsel 4:8

County 27:16

couple 4:24

course 16:12

Coweta 27:15

criticisms
11:21

cross-
examination
4:5

cut 9:12,14,19
10:10

_____

D

damage 25:5

danger 25:24

dangerous
25:16,20

days 5:18 28:7

deadly 14:22
21:17,25 22:3,
6,16,21,22,24
23:2,6,12,14

death 15:1,4,7,
8

department
23:23

departments
23:16,21

deposed 4:16

deposition 4:3,
7 27:12 30:17

deputies 7:9,17
15:16 16:20

deputy 7:1
10:24 11:11,
20,22 12:4,11,
16,22 13:13,
17,19,23 14:4,
14,15,21
15:13,15,24
16:4,22 18:7
19:13 25:14,18

describe 15:12

determined
5:22

die 7:19 10:15
18:10,11 20:20

died 17:11

disciplined
18:4

discovery 4:4
26:19

discussion 6:7

does 5:7 7:17
28:10

doing 10:21
11:16 12:22
15:13 18:9
19:17 25:15,23

done 19:2,5,7
21:18

doubt 29:17,21

down 11:4 19:8
22:19 28:11,12

drive 5:10 6:5

duly 4:15

during 15:17,
19 16:11

duty 18:12

dying 4:25

Dyksma 4:25
8:6 10:23,25
12:12 15:14,23
16:5,6 19:18
25:22

Dyksma's 7:2
16:15 19:15

_____

E

efficient 26:3

either 8:22 11:5

elaborate 7:23

emergency
15:21

end 28:12

ended 24:25

enforcement
10:5

enough 18:13

even 14:8 20:3

ever 20:14,17
26:4 27:6,7

every 9:25

everything 5:22
6:21 29:6

EXAMINATION
4:17

examined 4:15

examiner 13:9
15:9

except 4:9

exchange
13:25



Case 4:17-cv-00041-CDL   Document 37   Filed 05/15/18   Page 41 of 46

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.                           DEPOSITION OF
ROBERT MICHAEL JOLLEY on 09/26/2017                            Index: expectation..JONES

**expectation**
21:9

**experience**
10:5

**extract** 15:16

**extraction**
15:17,19

---
**F**

**facility** 27:14

**factors** 13:11

**fair** 25:25

**fairly** 27:2

**faith** 13:1

**familiar** 10:4
20:11

**family** 25:3

**far** 17:9 21:9
23:23 30:3

**fatal** 12:23

**favors** 14:1

**feel** 14:13

**few** 5:18

**figure** 29:3

**filed** 6:14

**find** 6:1

**first** 4:15

**follow** 26:25

**follows** 4:16

**football** 18:20

**force** 7:18 8:1,
2,9 14:22,25
15:7 21:25
22:3,6,7,13,16,

22,24 23:2,6,
13,15,23 24:18

**forearm** 9:17

**form** 4:10 7:20
9:5,19,24
10:17 12:6,15
13:4 14:2,7
15:2,5 16:1,7
18:15 22:12,25
23:7 24:6

**former** 13:9

**forms** 7:25

**found** 25:2

**four** 8:8

**front** 24:8,24

**frown** 8:17

**full** 4:20,21

---
**G**

**gain** 7:15

**GBI** 26:9,23

**gentlemen** 18:8

**Georgia** 28:12,
14

**gets** 28:2
29:12,17

**getting** 11:15
15:12 22:9

**girlfriend** 18:21

**give** 13:25
25:10

**given** 20:10

**giving** 5:3
29:19

**goes** 17:10

23:23

**going** 4:10 5:6,
11 11:13 14:19
19:20,22 21:23
29:19,23

**gone** 18:25

**good** 13:1

**got** 6:4 22:8
26:19 27:2
28:21,25

**grab** 21:18

**grabbing** 21:14,
20

**ground** 8:7
16:6

**guarantee** 19:5

**guess** 6:6,13
13:12 14:12
15:11 21:14,21
23:4 24:2,25
28:17

**gun** 8:16
21:15,20 22:6

**guy** 21:18
24:22,24

**guys** 30:13

---
**H**

**handcuffed** 8:7
15:23 16:6

**handcuffs**
12:18 15:18,20
16:9,12,16,18,
21

**handled** 11:22
19:11

**happen** 13:15

**happened** 4:24
8:17

**having** 11:8,18,
19 25:6

**head** 8:16,21
22:19 30:5

**health** 29:5

**heard** 9:25 10:6
17:11,14,18
20:13,14,15,17

**help** 24:21

**here** 4:23 5:8,
10 14:19 18:8
19:7 25:11

**high** 18:19

**himself** 11:22

**hit** 24:4,5,9

**hog-tied** 20:19
21:2

**hog-tying** 20:15

**hold** 21:19

**holds** 21:10,12
22:11 23:17

**hope** 28:15

**how** 11:9,13
27:19

---
**I**

**I'M** 10:24 22:14

**idea** 27:19

**imagine** 22:11

**immediately**
16:19

**improper** 7:6
11:10

**incident** 4:23
5:1,4,14 6:10
11:12,19 18:4,
5 19:9,10 27:8

**incidents** 17:11
19:23

**included** 18:22

**indicated** 13:11

**individual**
15:16,21

**initially** 11:24

**instance** 4:14

**intentionally**
14:14,15,21,24

**interview** 5:4

**interviewed**
5:25 26:9
27:10

**interviewing**
5:20

**into** 15:21
21:23 23:20

**investigation**
26:12

**involved** 18:3
27:10

**it's** 16:17 20:5
22:17 26:22

---
**J**

**Jackson** 28:11,
23

**jocks** 18:22

**Jolley** 4:3,13,
19,22

**JONES** 4:2,18



**DISCOVERY**
**LITIGATION SERVICES**
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 4:17-cv-00041-CDL   Document 37   Filed 05/15/18   Page 42 of 46

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.                    DEPOSITION OF
ROBERT MICHAEL JOLLEY on 09/26/2017                          Index: jump..obviously

6:8 7:21 9:7
10:18 12:10,20
13:7 14:3,11
15:3,10 16:3,
10 18:18 23:3,
10 24:12
25:10,13
26:11,16,20,24
27:3,4 28:4,9,
15,18 30:12,16

jump  5:10

just  10:4 14:24
17:18 18:23
20:5,8 21:6
25:10,23 26:1,
24 27:2,5
28:20 29:1
30:8

justified  22:18

―――――――
        K
―――――――

keeping  27:17

kid  5:19

kids  29:20,22

kill  12:14 13:13
14:14 21:20
23:5

kills  23:1

knee  7:2 11:4
12:12,17 15:25
16:5,23,24
17:3 25:22

knew  12:22
25:17,19

know  5:9 6:2
13:25 14:9
21:18 23:22
25:15,17 26:7,
12,18

knowing  11:9,
13 12:13

knowledge
21:13

―――――――
        L
―――――――

last  6:3,5 18:25

law  4:6 10:5

lawsuit  6:14

lawyer  25:3,7

learned  11:20

leg  23:12

less  21:25

let  5:10,12 6:1
15:12 30:12

let's  5:9 10:12

lethal  8:1,2,3,9,
12 12:5 19:14
22:12 23:23

level  14:25
29:4

like  10:12 14:5
21:15,16,21
23:24

likely  23:5

little  5:13 11:20

long  22:17
27:19 29:2

look  21:11
25:11

looked  6:14,16
11:25

lot  18:22 29:16

―――――――
        M
―――――――

M-I-K-E  4:22

make  6:20
13:18,23 14:19
21:12

making  26:2

man  18:10

matter  19:23

may  14:25 20:6
29:12,14,15

maybe  11:23
28:20

mean  7:10
14:10,13 20:25
23:11

means  10:9

meant  13:13

media  6:21

medical  13:9
15:9,21 19:25

memory  5:13

method  7:18

Michael  4:13,
21

might  5:9 22:13
25:3 28:11

Mike  4:3,22

mind  13:18

mine  13:17

minimal  29:8

minute  25:10

month  18:25

more  5:15 6:14

11:19,20 16:2

most  26:2,3

moved  30:5

moves  22:19

Mr  4:2,12,18
6:8 7:20,21
9:5,7 10:17,18
12:6,10,15,20
13:4,7 14:2,3,
7,11 15:2,3,5,
10 16:1,3,5,6,
7,10 18:15,18
22:25 23:3,7,
10 24:6,12
25:10,13
26:11,15,16,
18,20,22,24
27:1,3,4 28:4,
6,9,13,15,18
30:12,16

multiple  17:19

myself  18:22

―――――――
        N
―――――――

name  4:20,21

necessary
21:20

neck  7:2,4 8:25
9:12,18 10:13
11:5 17:3,4,6
21:18

need  7:24
15:21 27:12

negligence
25:1

news  6:21 18:1

newspaper
24:14

next  22:2

Nicholas  7:2
10:25 12:12
15:14 16:15
19:15

Nicolas  4:24
8:5 10:23

night  6:5

nightstick  9:22

nine  28:24 29:3

nobody  29:11
30:1,2

none  18:3
19:24

normally  29:1

notes  25:11

nothing  29:21

notice  4:8
16:14

now  6:13
11:18,21 12:2
18:14 19:4
23:25

―――――――
        O
―――――――

Object  7:20 9:5
10:17 12:6,15
13:4 14:2,7
15:2,5 16:1,7
18:15 22:25
23:7 24:6

objections  4:9

obstruct  20:19

obtainable
26:22

obviously  8:16



Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 4:17-cv-00041-CDL   Document 37   Filed 05/15/18   Page 43 of 46

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.                    DEPOSITION OF
ROBERT MICHAEL JOLLEY on 09/26/2017                                Index: October..right

28:2

**October** 27:21, 22 28:5

**off** 6:7 8:24 9:12,14,19 10:10

**office** 5:20

**officer's** 21:15

**officers** 8:8 18:3,8 19:13 21:9 24:5

**okay** 4:19 5:3,6 6:1,25 9:15 10:22 11:3 12:3 13:8,16, 21 15:11,22 17:6 18:13 21:22 24:2 26:24

**older** 19:4,6

**once** 16:21

**one** 5:15 7:25 8:8 9:24 13:11 16:2,23 18:20 20:25 25:17

**only** 9:15 19:23 21:17

**opinion** 19:12 25:14,16 30:3

**other** 4:5 9:18, 19 13:19 15:15 18:7,22 21:1 23:20 25:17 27:5 30:13

**ought** 28:4,20

**our** 18:23

**out** 8:15,20 11:9,13 13:17

20:22 24:8,24 27:20 29:3,19

**over** 6:14 8:8 25:11 27:17

**own** 20:6 25:1

**oxygen** 9:12, 13,20 10:11

---

**P**

**paper** 24:2

**parking** 18:21

**patrol** 5:15,16 24:10,22

**people** 17:11, 19 27:10

**per** 21:3 22:11

**personally** 26:4,8

**phrase** 20:4,11, 13

**pick** 27:24

**Pierson** 7:1 10:24 11:11, 18,20,22 12:4, 11,17,22 13:13,19 14:5, 21 15:13,15,24 16:4,23 18:9 19:8,14,15,17 25:15,19 27:7

**place** 19:24

**placed** 8:7 12:19 15:18 16:8,18,21 20:18

**placing** 11:14 15:20

**Plaintiffs** 4:4,15

**play** 5:6

**player** 18:21

**please** 4:20

**point** 8:5,9,13, 18 27:13

**policies** 23:17, 20

**policy** 5:23 6:22 7:17 20:25 21:3,8, 11 22:10 23:22

**position** 16:24 19:17,20 20:18

**positional** 20:12,20

**possibility** 10:20

**possible** 26:3

**potential** 23:5

**potentially** 18:11 19:14 21:16

**pressure** 9:18 10:11,14,24 11:11 16:15 17:12 19:14

**pretty** 6:16

**primary** 11:14

**probably** 28:6, 16,24 29:25

**probation** 29:14,15

**produced** 26:16

**proper** 10:23

**pulled** 8:15

**purpose** 12:19 25:22,23

**purposes** 4:4,5

**pursuant** 4:8

**put** 7:1,14 9:11,17,21 10:14,23,24 11:4 12:12,17 15:24 16:5,24 17:12 29:9,10

**putting** 19:14 25:22

---

**Q**

**question** 4:10 7:22 11:2 12:8 20:24 22:15 25:21

**quickest** 26:2

**quote** 23:25

---

**R**

**ran** 24:24

**rape** 14:16

**rapidly** 19:22

**read** 20:6 24:2

**reading** 27:5,6

**ready** 6:2

**realization** 17:17

**realize** 13:2

**really** 22:14 24:14

**reason** 5:7

12:21 20:10

**recall** 4:25 6:25 7:2 15:22 16:22

**received** 19:24

**recently** 6:10, 12 27:2

**Recess** 25:12

**recollection** 16:17

**record** 4:20 6:7

**referring** 7:13

**refresh** 5:13

**released** 26:14

**remember** 5:3, 14,18 18:19

**removed** 8:6 16:23

**report** 13:12

**reports** 27:6

**reschedule** 6:4

**reserved** 4:9

**resistance** 16:19

**responsiveness** 4:11

**restrain** 13:1

**restraints** 11:14

**review** 5:16 14:20

**reviewed** 5:21 6:9

**reviewing** 5:14

**right** 8:2,3,10



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

11:6,18 16:18
20:2 21:22
22:1,13,20,23,
24 23:4,6,25
27:3,25 28:3
29:14

**Robert** 4:13,21

**run** 24:8

**running** 24:4

___

**S**

**safe** 21:6

**safety** 29:9

**said** 5:21 11:4
24:1

**same** 9:23

**sat** 18:23

**Savannah**
28:19

**saw** 11:3,4
15:13,15,18,20
20:9 27:10

**saying** 22:15,
21

**school** 18:20
29:20,22

**screenings**
29:5

**se** 21:3 22:11

**seconds** 19:23

**see** 5:9,10,11,
12 6:1 19:17,
20

**seeing** 7:1,3

**seen** 6:11
20:21 26:11,21

**sentenced** 28:2

**sentencing**
27:21 29:24

**September** 4:1

**service** 29:16,
18

**sexual** 14:1

**sexually** 14:16

**sheer** 17:18

**Sheriff** 4:3,19

**shipped** 27:20

**shoot** 23:11,12

**shot** 8:16

**should** 19:1,3,7

**shoulder** 7:5
11:5 17:5,7

**show** 17:14,22,
23 20:21

**sick** 6:4

**side** 21:6 30:5,
6

**significant**
25:24

**since** 11:21

**sir** 5:2,5,16,24
6:11,19,24 7:5,
8 8:4,14,19,23
9:2,6,24 10:2,
7,21 11:7,25
12:24 14:17
16:13 17:1,8
18:17 19:10
20:13,16 23:8
26:6 27:9,18
30:11,15

**sitting** 18:8

**situation** 7:16
11:15,23 12:1
14:20 19:21
21:16,21,24
24:3 25:20

**situations**
22:12

**six** 28:11

**slow** 19:8

**sole** 12:19

**some** 5:7,19
7:14 9:18,19
14:25 17:14,
22,23 19:6
20:21 23:16
27:13 30:13

**somebody** 6:4
7:19 8:15,20,
24 9:3 13:25
14:15,16 23:11
24:11 29:4

**somebody's**
9:18 10:13

**someone** 9:11
13:1 20:18
21:14 24:8

**someone's**
17:19

**someplace**
28:12

**something** 7:9
9:22,25 18:10
19:2,5 20:5
21:15

**sometimes**
28:7,8

**somewhere**
11:5 29:10

**sorry** 10:24

**south** 28:12,14

**specifically**
11:17 27:8

**staff** 19:24

**stand** 6:23

**state** 12:8 13:9
24:10,22 28:1

**statement** 18:1
25:25

**statements**
27:5

**station** 5:19

**step** 18:12

**stepped** 19:2

**still** 6:23 20:22
25:6 27:13

**stood** 10:13

**stop** 4:25 8:3
13:24 17:21
19:8 24:22

**strangled** 8:25

**studies** 17:14,
16,22,23 20:21

**study** 11:19

**submission**
7:15,18,19

**such** 10:13

**sue** 25:3,8

**sufficient** 17:20

**sure** 5:24 7:4
11:1 12:7 13:5
15:6,8 20:3
21:12,24 22:14
29:7

**suspect** 20:15
24:4,10

**suspects** 21:1

**swap** 13:24

**sworn** 4:15

___

**T**

**take** 17:25 18:3
27:12 29:1

**taken** 4:3,7

**takes** 29:3

**talk** 26:4,7
30:13

**talked** 27:7,8

**talking** 20:1,4
21:25

**talks** 29:19

**tapes** 27:11

**technically**
21:22

**technique** 7:11,
12,13

**tell** 4:19 14:12
17:3 25:18

**term** 19:25

**test** 6:5

**testified** 13:10

**testify** 29:23

**testimony** 18:2

**than** 5:15 6:15
19:6 21:25
27:5

**Thank** 30:16

**that's** 17:16



**DISCOVERY**
**LITIGATION SERVICES**
Court Reporting • Videography • Trial Presentations

Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.          DEPOSITION OF
ROBERT MICHAEL JOLLEY on 09/26/2017                          Index: their..would

18:6

their 8:24 9:11 13:18 17:13,20 20:6,19

thereafter 16:19

these 18:8 19:6,13 30:13

thing 6:2 9:23 21:17

things 11:9,13

think 7:12,13 13:12 17:4,15 18:11 19:1,7, 10,16,19 20:8 22:8 25:23 26:1,9,20 27:21 30:4,9

thinking 13:24 25:19

those 4:10

thought 6:21 14:4

threat 8:3,12 21:17 29:4

three 8:8 18:8

thumbs 18:23

time 6:3,17,18 8:18 11:12,18 12:1,17 16:2, 23 17:2,3 18:20 25:19 28:2 29:12,13 30:14

today 6:23 18:2

told 27:7,9

Tom 7:1

too 14:1 28:22

took 8:20,24 19:23

torso 11:6 16:16 19:15

total 17:16

totally 17:15

traffic 4:25 13:23

trained 7:10,11

training 10:2,3 19:25

transitional 28:21

trip 28:20

trouble 25:6

true 18:6

truly 14:13

truthful 23:25

try 21:19 28:4

trying 12:25 22:9 24:13,19, 21

tuesday 4:1

turn 11:13

turned 11:9

TV 5:4,19

two 8:8

type 7:14 16:20

U

unaware 12:4

under 11:15 18:13

understand 9:16 11:1 12:8 13:20 14:19 22:23 28:3

understanding 9:8,10 10:8,19

unintentionally 15:1

until 9:13 16:5

up 5:11 18:21, 23 22:19 24:25 26:25 27:25 28:12

upper 11:6 16:16

us 4:20

use 7:18 11:10 21:12 22:5,6 24:18

use-of-force 7:25

used 8:3 15:7, 17 22:16 25:3

using 5:10 14:21,25 21:9

usually 27:24

V

valid 7:10

vehicle 8:6 15:16

verdict 20:22 30:8,9

victim 24:16, 23,25

video 5:7,14, 15,22 6:9,10,

11,22 7:1 10:25 11:3,9 15:13 16:17

view 7:7

viewed 11:8,24

W

wait 28:20

want 5:8 14:12 28:13

wanted 24:17

wanting 14:9

watching 6:25

way 10:14,25 11:22 18:5 19:21 20:25 21:8 24:7 25:17 26:3

weapon 23:14

weeks 28:8,11, 24 29:3

weight 17:19

well 11:17 12:3,21 13:8 15:11,12 16:22 20:8,24 21:23 25:8 28:19 29:1,5

whatever 21:19

Whenever 28:1

where 8:5 9:12, 17 17:11 18:25 19:1 21:16 22:12 23:17 24:3,19 29:10

whether 13:18 16:14 19:13,15

20:23 21:1 22:5,6 25:17

which 22:9

while 5:12 12:18 16:20

Who 25:7

why 10:22 21:5

wife 25:6

will 4:2,9 5:9 7:23 26:24 28:23 29:7,9

WILLIAMS 4:12 7:20 9:5 10:17 12:6,15 13:4 14:2,7 15:2,5 16:1,7 18:15 22:25 23:7 24:6 26:15,18, 22 27:1 28:6, 13

within 28:7,8

witness 4:14 9:6 12:7,16 13:5 14:8 15:6 16:2,8 18:16 22:19 23:1,8 24:7 28:16 30:5,15

work 5:9

working 5:12

worth 25:5

would 6:23 8:9, 17,21,22 9:1,4, 11,22,24 10:10 13:17,23 14:1, 4,5,14,15,17 18:10,12 19:5 20:9 21:11,22 22:2,24 23:2,6,



GREG DYKSMA, et al. vs. DEPUTY TOMMY PIERSON, et al.
ROBERT MICHAEL JOLLEY on 09/26/2017

DEPOSITION OF
Index: wouldn't..yours

8,19,24,25
27:20 28:13
30:4,9

**wouldn't** 8:17
9:23 10:16

**wrapped** 8:25

**wrong** 5:10

—————

Y

—————

**Yeah** 22:4
26:11,20 27:23
28:23 29:7,10

**year** 13:22 24:3

**years** 4:24 10:4
18:25 19:4,6

**yet** 26:14,21

**young** 5:19
18:10

**yours** 14:14,15



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com